We call the first case for today, 2015-30880, Olivia Kneeland v. Carolyn Colvin. You may approach. Your Honors, I'm Joe Okers, I represent Olivia Kneeland. May it please the Court this morning, Appellant's first application for disability benefits was filed on September 21, 2006, just about 10 years ago. She later filed a second application. She has had two ALJ hearings, one favorable determination by the state agency, Disability Determination Services, and one decision to remand the case by the Appeals Council. This was done on the new claim that she filed and was based upon new evidence that the state agency reviewed a psychological report from Dr. Dilks and an orthopedic surgeon's report that's Dr. Bernauer. The Appeals Council sent this back, and then that reopened their favorable, and they were going to remand. They reopened their favorable decision that had been made. What was the new evidence that precipitated the remand? I believe it was the two reports I just referenced. I understand the reports, but what's the substance of the reports? Well, Dilks, I'm not as acquainted with Dilks. I'd have to look that up, Your Honor. It's in the brief. But Dr. Bernauer found that she could not meet the requirements of employment because of her inability to stand and walk for certain amounts of time per day. Is there record evidence that Dr. Bernauer is, in fact, a treating physician? Treating physician. That's right, Your Honor, and that's an important point. I'd like to note that on Argument 1 and Argument 2 . . . I'm a little confused. Okay. She had gotten a favorable disposition, and then it was up on appeal on the second application. She went back and filed a . . . the first one was for benefits, the other was a disability claim, right? Right. And the disability claim came second or first? I don't remember the sequence. What was the sequence? The disability or the Social Security claim? I mean, they're both Social Security claims. The dual claims were the second claim. Okay. And that was the claim that went up on appeal. Right. So then this new evidence came in, and it was favorable to her on appeal, and so they sent it back. You know, the Disability Determination Service had the two new reports and favorably treated her application. Right. Then the Appeals Council combined the first application and took the second application as well for their determination. They decided to remand the case. And interestingly, they used this sequential evaluation process, the five-step sequential evaluation process, and stopped after step three. They couldn't find disability at step three. And it was at that point, Your Honor, that they remanded the case to another ALJ for another administrative hearing, and that was legal error. There is no stopping at step three unless disability is found. You have to go to step four and then step five. So the Appeals Council created legal error by the process of remanding the case after step three. In argument one and the related argument two of the defective hypothetical, we argued that the finding on residual functional capacity by ALJ Herzig failed to reference Bernhauer's report. If we hold that the ALJ erred in not addressing Dr. Bernhauer's report, could this type of error, ignoring the opinion or the report, be harmless? It's legal error, Your Honor. It's legal error in? It's legal error, and the case law, as I've referenced, is that that's determinative. A legal error cannot be classified as harmless and treated as if it didn't exist. The relief, if you win, the relief you are requesting is just a remand. A remand. So even though it's ten years old and you've already had one, you cite the Ramirez case and that's all you want. Correct. Do other courts, other circuit courts, have the same unbroken line of authority saying that if you're going to reject the treating physician's medical opinion, you have to explain it? Are we out there alone? I didn't know that. There's a Seventh Circuit case going back to 1986, Dieters versus Secretary of Department of Health, Education, and Welfare, I believe it is. Just speaking off the top of my head, which held similarly. What if the remark is simply, I've considered it and rejected it? It just has to be some glancing proof that you've assessed it, or obviously you get into sort of gray area as to how deep the consideration has to be. No, there has to be something. No reference to the case at all, which there is not in this. So you know no other contrary authority, no other courts of appeal have... Not according to my research, Your Honor. So is this not a case where there's one physician says that the patient can stand, and another says they can't, and so the... This was the treating physician, Your Honor, and that's the difference. That's what makes this error even more aggravated. Not only is it ignored completely in Hertzig's opinion, but he relied on an evaluation that was done by a physician who did not treat Ms. Neelan. Could he rely on that? The law as I understand it, and as I referenced in my brief, says that the treating physician's given precedence. It doesn't say that they can't factor in the consultative physician, but it has to be given weight. More weight? More weight. But for good cause, and it could be just a sufficient detail from Dr. Barnes, or a substantial number of physicians. In other words, you're not objecting to the good cause standard that would allow... There's just nothing in this record. But it is the treating physician, it is more significant, and should be given more weight because of that. And it should definitely follow the Ramirez standard that you mentioned, Judge Higginson, that says that it must be mentioned, and there must be some analysis, so we have nothing. We don't have to decide whether they gave it enough weight, or this or that, because it's not mentioned at all. It needs to go back. The closest we get to it, as argued by opposing counsel in his brief, is he said he looked at everything. That's not sufficient under Ramirez. Or I think there's another case as well, besides Ramirez, the Copeland case, another Fifth Circuit case. But in the ordinary course of these things, you have the treating physician, and now we have this non-treating physician. Who engaged the non-treating physician? Who engaged him? Yes. How does that come about? I'm drawing a blank on that, Judge. I'm sorry. I think... Is this a doctor she went to? It's not a doctor she went to, he's not a treating physician. Who's thought that opinion? I think it grew out of the original hearing, if I'm remembering correctly. Was it the vocational expert's determination, and then it was incorporated? Well, the vocational expert's opinion would have been separate, as I understand it. I'm just trying to understand whose payroll the non-treating physician is. You have some doctors just looking at paper, and you have a treating physician, and then you have this administrative process, and they don't bother to talk about the fact that the treating physician has an opinion at all. I'm just trying to get a sense of this. Administrative process sometimes works counter to my intuitive instincts of fair process. I'm in that club, too, Judge. But then I didn't practice in the administrative field, I practiced down there. I would like to mention the Fifth Circuit case of Coal, Xrel Coal v. Barnhart, which I think is on point here. In that case, the appeals counsel was involved, and this court, if I could quote from page 151, when is here the appeals counsel modify the decision of the ALJ to reopen in the appeals counsel's June 9, 1995 order, vacating the ALJ's May 9, 1994 hearing decision and remanding for further proceedings, it is the decision of the appeals counsel and the reason it offers for reopening which control our review. In that case, they stopped it at step one. Same problem. They didn't complete the sequential evaluation, and that is legal error. Unless there are other questions now, I request remand. Thank you. We have your argument. We just have time for rebuttal. May it please the court, my name is Jose Ricardo Hernandez. I'm here representing Acting Commissioner Carolyn W. Colvin. As an initial matter, I do want to point out that Dr. Bernhauer is not a treating physician. He is a one-time examining physician, and there is absolutely no evidence in the record from Dr. Bernhauer other than a single page of evidence from August 25th. But he didn't see the patient. I'm sorry, Your Honor? He didn't see the patient. This is a letter stating that he did examine her. Yes, Your Honor. All right. And what about the other doctor? The other doctor was testifying medical expert Dr. Barnes at the August . . . Testifying medical expert. Help me with what you're talking about. At the administrative hearing in August 2011, he was brought in by the ALJ to review the plaintiff's impairments. Okay. So, you have one doctor who examined the patient, another one who was hired by the other side and never sees the patient, and expresses a contrary view. Your Honor . . . Is that fair? Isn't that what happened? Our point is that it's not necessarily contrary, but that's a little bit down the road. But also, I don't believe that we're the opposition. Without characterizing my question, can you answer it? He was hired by the Social Security Administration to offer an opinion. We didn't . . . Well, that's very simple. The Social Security Administration hired one. He doesn't see the patient. And this individual, Caitlin, comes up, and she is examined by a doctor. Now, how did they . . . what treatment did they give to the doctor who actually examined the patient? The ALJ's decision doesn't mention Dr. Bernauer's report. They ignored it. Is that correct? Is that a fair . . . Yes, Your Honor. So, to be clear about this, then we have a person that's seeking benefits. They're examined by a physician. They have an opinion that supports it. It goes up. And then you have a government doctor, is what it amounts to, who is compensated. It does not examine the patient. And then the disability is denied, without it even mentioning the other patient. Why shouldn't we just remand on that basis alone? Well, our point is that the ALJ honestly had no reason to think that she was alleging any physical basis for her disability because she was initially injured in a motor vehicle accident in early 2006 and was treated, fixation of a plate, I believe, and . . . Was that the basis for the denial? The basis for the denial was . . . well, there was a basis for reopening, and that was a conflict over whether she met the standard for mental retardation or not. And then at the 2011 administrative hearing, she did not allege any physical basis for disability. Well, but what's the lawyer's name? I mean, the doctor's name. Bernbaum, you know, you characterize it as simplistic, but his statement is that the injury to the calcaneus, X-rays show the Bowler's angle, subtaller joint. It sounds like a medical opinion. Your argument isn't now that that's not a medical opinion. Your argument is that he wasn't a treating physician. Our argument is that this is . . . if it is a medical opinion, it's the very edge of acceptability for a medical opinion. I guess what would really help me from you would be citation to law because opposing counsel relied on published decision from our court, Loza, Newton, Goodley, Ramirez, all for the same simple proposition. And if I'm not mistaken, your brief just never touched them, didn't even cite any of those cases. So start at ground one. Do you dispute that we are controlled by the legal proposition that if an ALJ is going to reject a treating physician's opinion, there has to be explanation? Do you disagree with that as controlling law? I disagree that it's controlling in this case because Dr. Bernauer is not a treating physician. That's your position at this point. What's your best case that someone who is an orthopedist and who gives a diagnosis as this one, what's your best case? I need law, not just your opinion. What's your case that that person is not a treating physician? That there is absolutely no evidence in the record that he had an ongoing treatment relationship. What's your best case for this one-time examiner theory defeating someone's? Well, Your Honor, that's the regulatory definition of what a treating source is. What's your case that says that a doctor, an orthopedist, that examines someone and gives a diagnosis like this one, because they only looked at the person and gave that description once, is still not a treating physician? What's your authority for that? Your Honor, the regulations are the same. So there's no case that stands for that distinction? And there's no specific regulation that you're citing us to? Absolutely, I'm citing a specific regulation. We haven't heard it yet. I don't have access to the Code of Federal Regulations, Your Honor. Okay. But there is a specific definition. Is it 1527? No. 404-1527. Okay. Did the commissioner make such an argument in the briefing or at any other time that not a treater? I don't see that as a made argument. It seems like it's an argument that's being made. Your Honor, honestly, the first time I ever heard Dr. Bernal referred to as a treating physician is today, about 15 minutes ago. It's in the briefing. That's the whole basis of the brief. Your Honor, that is a misstatement by appellate's counsel. I'm sorry. But you didn't rebut it in your brief. Your Honor, that status is what it is. It doesn't need to be rebutted. All right. Well, at least what you've done in this oral argument is reduced your argument. You agree with the proposition of law, and would you therefore also agree that the cases you cite, the Perez decision and the other one, are distinguishable because the ALJ actually did talk about the medical report. So the position to us now is narrowed down to, is Dr. Bernal a treating physician for purposes of the reg? That's your argument. I would say that yes. If you guys—I'm sorry, you guys—if the court finds that Dr. Bernal is a treating physician and that he's a treating specialty physician, then absolutely, Newton would control. But Newton does not control because Dr. Bernal—and I would point out to the court that there's honestly no evidence of record that he's an orthopedist either. It doesn't say so on this one page that he is an orthopedic specialist. Argue that in your brief. Or is this something new that we're hearing today for the first time? You know what, Your Honor? I just reviewed my brief, and I do believe that I accepted the appellant's proposition that he was an orthopedist. Okay. Then you understand that makes it very difficult for us if you stand here and argue something contrary to your brief. Absolutely, Your Honor. How did it come about that she saw the doctor that you say didn't treat her but examined her? Your Honor, I would have no idea how she came into contact with Dr. Bernauer. But she consulted the doctor on her own, apparently, as far as you know. As far as we know, Your Honor. And this is not a Bayer treater record. He used X-ray results as well. I'm not sure those X-ray results appear in the record, but— Well, from his report, somebody was looking at X-rays. He could have reviewed the X-rays from her treatment in 2006. Well, that's what the doctor would do. But he certainly describes the extent of her injuries. Yes, but he performed absolutely no clinical examination of her lower extremities. He gave grip strength, for example, but he didn't assess her gait. He didn't make any strength findings regarding her lower extremities. And I would also point out that the ALJ was not restricted to this one opinion. Honestly, the ALJ didn't restrict himself to this one opinion because, as our point was, he had no reason to consider plaintiff to be disabled due to physical means because that's not what she was alleging at the August 2011 hearing. At what point does plaintiff abandon her claim of physical disability when she doesn't mention it to the ALJ? What happens at a hearing, I'll put that in quotes, before an administrative law judge in these circumstances? There's no evidence taken other than just a record of paper, right? Yes, Your Honor. So in a hearing, what happens? Do the lawyers show up and just argue on paper or what? The hearing is taken for the purpose of getting the claimant's testimony regarding her symptoms and limitations. It is specifically for that purpose. But the claimant appears and is interrogated by the administrative law judge? The claimant can be questioned by the administrative law judge, but I believe in this case the majority of the questioning was by plaintiff's own representative. Okay. So that's the sum of it. Yes. If you take a look at the hearing, I can cite you to the pages 647 and 648 in the record, she testified about what she believed rendered her disabled, and that testimony was all about her mental limitations. And when the administrative law judge specifically asked her, do you have anything else to testify about, she said no. And on that basis, I'm not sure the ALJ was honestly on notice that he needed to discuss this report in depth. Regarding, if I can move on to another procedural error, plaintiff's counsel is talking about how the appeals counsel should have performed a full disability evaluation. Now let me run through very, very briefly the procedural history on this. She applied for disability in September of 2006. It was an ALJ hearing in 2008, and she was denied disability. And she filed a second round of applications in 2009 and was found disabled due to mental retardation. And the appeals counsel, being in possession of conflicting evidence as to whether she was mentally retarded or not, accepted review in June 10th, vacated the earlier denial of benefits, consolidated the claims, and sent it back down to an ALJ for a new hearing. And to the extent that the appellee is claiming that the appeals counsel committed reversible error in so doing, there's no basis for that, because that was not the appeals counsel's function at the time. They were not making a determination of disability status. They were not accepting jurisdiction over plaintiff's claim. They were making a determination that the claim should be reopened and reheard. And the appeals counsel was not making a final decision, and the authority that the appellee is relying on deals with when the appeals counsel assumes jurisdiction and does some modification of the final administrative decision. And that was not the case here. I would also point out that even if we are going to regard Dr. Bernhauer as a treating physician for sake of argument, and I know we've discussed whether he has that status or not, that the question remains as to whether this error is reversible error or not under Audler. And Audler basically holds that upon a determination of legal error, the court's obligated to take a look and see if this error is harmful or not. You maintain that Dr. Bernhauer's letter is not a medical opinion under the regulations? I think it fails to meet several of the criteria, but that is a judgment call. Let's talk a little bit about that. 1527A2 states that medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairments, including symptoms, diagnosis, and prognosis, what you can still do despite impairments and your physical or mental restrictions. Bernhauer examined the patient, Keelan, and included observations and expressed opinions about the work limitations. On the face of that, it appears to come within the reach of that regulation, but you maintain to the contrary. Tell me what that is. Your Honor, our position on that was that it lacked supporting clinical findings. As I noted earlier, he did not assess her gait. Clinical findings? I'm sorry? I didn't hear what you said. Clinical findings? Clinical findings, Your Honor. I heard that. The act requires that disabilities be demonstrated by clinical findings from an acceptable medical source. Did they have x-rays? What clinical findings would you expect if you're demoning this type of disability? I would expect at the very least that Dr. Bernhauer would have offered an opinion as to the nature of plaintiff's gait, as to how she ambulates, how she walks, whether she needs an assistive device to walk, for example, what kind of strength there was in her lower extremities. He should have examined. I don't follow. You said he should have examined clinical findings. My question was, what clinical findings are you talking about? And you don't give me what your response is. Well, he should have watched her walk. Now, that doesn't sound like a – when you tell me that he should have looked at clinical findings, that says to me that there are some clinical findings that he brought before him to examine, and that's what I'm hearing you answer. Well, Your Honor, you or I watching someone walk would not be a significant thing, but a physician making an observation of someone's gait is indeed a clinical finding, and it is indeed helpful to an ALJ and the finder of fact when they're determining someone's disability status. It is a clinical finding, but did he make no clinical findings then? He made a clinical finding regarding her grip strength, Your Honor. Well, it said medical opinions or statements from physicians and expressed judgments about the nature and severity of impairment. And as far as it goes, it says her examination shows the foot is very swollen, it is deformed-looking, and there has been an obvious crush injury to the calcineus, which I believe is the ankle or heel. It's tender to palpation. X-rays show there's a plate on the calcineus. That means there is internal fixation with installation of a plate on that. The bowler's angle is flattened. And the subtalar joint is very arthritic. And those are some observations, and there are some clinical findings there. However, there are not the clinical findings that we would expect of a thorough medical examination. But this is not what was said by the person making the decision. In fact, the person making the decision just didn't say anything about this report. You're absolutely right. And so those would all be things that could be gone into on remand, couldn't they? Or perhaps. But the rules, our case law says that they have to consider the treater's information, and there's no evidence that any of this, well, it wasn't thorough enough and we're going to disregard it. None of that happened to our knowledge. Your Honor, I would say that there was indeed some consideration because Dr. Barnes made his review on the full evidence of record, and that included Exhibit A to F, which is Dr. Bernhauer's report. We're not talking about Dr. Barnes' consideration. We're talking about the reviewing judge. Dr. Barnes' judgment was relied upon by the administrative law judge. That's right, but the ALJ needs to show that they considered Dr. Bernhauser. How do you say it? Bernhauer, yes, Your Honor. Bernhauer. To the extent that the ALJ should have included a mention of Dr. Bernhauer's exhibit, I believe he should have. I think that might have kept us out of this courtroom right now. But to the extent that's an error, I still maintain that it's a harmless error at best. What you basically say to us, that you can defend those decisions, these silent rejections on a hypothesized basis, that's sort of like the extreme view that we have on a rational basis test. That is, is there anything you can think of after the fact that will support that? That's why the rules insist that there be some mention of it. That's not a technicality. It's to demonstrate that they have, in fact, considered it. So what that does when they fall silent is that you can just, whatever the lawyer can later think possible to admit, it becomes the argument. In my sense, that's what's happening here. I'm not being critical to you. Your argument's there, but I'm just not sure that it's certainly not in the record, and it certainly is not what was actually, we don't know whether he did or not. Well, Your Honor, I would say that as far as it goes, some sort of pro forma requirement to make a recitation wouldn't change the substance of this case. And that's what's important in harmless error analysis. Does the rules require him to say anything? Does the law require him to say anything? Can he just say denied? Absolutely not, Your Honor. So they do require an explanation. They require a decision setting forth the reasons for the decision. And one of those, and the ALJ discussed, for example, the full evidence of record, which included, by the way, work activity as a Waffle House waitress in 2008, which she testified she did part-time over the course of that year and earned about $3,800 doing so, which I would submit is an activity level that isn't necessarily consistent with the degree of disability that appellant is now, I'm sorry, appellee is now alleging before the court. And the ALJ and the court are empowered under the ALJ does his analysis and the court's empowered under 405G to review the full evidence on which the decision was based, and that would include this. In the case that we can say that this was harmless error, I thought our law is pretty strict that if you didn't do it, you go back. And so what case says it's okay to find the error harmless? Well, Adler was a case that stood basically for the proposition that upon a finding of error, the proper course of action would be for the court to make a determination as to whether that was harmless or not. And I would say that that's exactly what the district court did when it reviewed the decision and affirmed. And you're all being invited to do the same thing, to review the evidence in its totality, including plaintiff's own testimony, her activity level, and those, indeed, were discussed by the ALJ and decide whether the ALJ's omission. I see my time is up. May I finish? You may finish. Thank you, Your Honor. And including the entire evidence of record and make a determination on the whole as to whether on balance this decision has a point or whether sending this back down would result in nothing more than the addition of a few sentences and another denial. Thank you. As the record stands now, what compensation or support does she receive? As the record stands now, Your Honor, I didn't look into it in great detail, but my understanding is that she elected to continue receiving benefits during the pendency of this appeal. I'm sorry? She elected to continue to receive benefits while this appeal was ongoing. If you're correct, what benefits will she be entitled to? The benefits will end, and she will likely be assessed an overpayment, Your Honor. She will be what? An overpayment for the time period for which she was determined not to be eligible for benefits. Does that mean you want the money back? We would ask for the money back, and if she doesn't pay it, and this is, of course, way outside the record, Your Honor, but the normal procedure in that is to ask that it gets back to them, and if it doesn't come back, then they will simply wait until she's eligible for something else and then do some form of offset. She wasn't about to pay it back because your judgment she couldn't pay it back because she can't work. That is true, and there are waiver procedures as well in case you're worried about her well-being. She is free to ask that we find that she was without fault in creating the overpayment. Thank you. We have your argument. Thank you, Your Honor. Well, first I want to apologize to the Court for misspeaking and referring to a treating physician rather than an examining physician. I don't think it makes any difference. In fact, if I can go to my brief at page 23. Further, 20 CFR 404.1527 provides that regardless of its source, the ALJ will evaluate every medical opinion the ALJ receives. Generally, the ALJ gives more weight to the opinion of a source who has examined claimant than to the opinion of a source who has not examined claimant. That's the important distinction here, not whether there was a continuing history of treatment, but whether there was an examining physician's opinion that wasn't referred to and wasn't relied upon in the hearing. Opposing counsel said 1527 isn't the specific reg. Do you know the regs well enough to tell me? What about 1502? I don't. Okay, all right. That's fine. I don't either. Sorry, Your Honor. But continuing really quickly on page 24, the brief proposes that the Fifth Circuit has held that an ALJ cannot reject a medical opinion without an explanation. Dr. Bernauer not only diagnosed the significantly limiting physical impairment fractured right calcineus but provided an informed medical judgment regarding appellant Neelan's limitations or restrictions. It is my opinion that she cannot work any job that entails standing for longer than 30 minutes or walking farther than 50 yards. See also SSR 96AP, the August 25, 2008 medical opinion is uncontroverted, compelling, and unaddressed. Speculating, as opposing counsel did, about the fact that if Dr. Bernauer's opinion had been examined, it would have not led to a finding of combined mental and physical impairments that qualify under 1205C3 as disabling. I think that's speculation, and it's something that can be cured by this court remanding the case for another hearing. I refer you again to Cole, X. Rel. Cole, from this circuit, in which the Fifth Circuit examined the process that the appeals counsel used and ended up reversing. At what point was the total package of this woman's ability to perform in the workplace examined? She had significant cognitive disabilities, and she had significant physical disabilities, and unfortunately they got separated in an administrative process. It strikes me as very difficult to make the ultimate judgment about her ability to perform without putting them together. It makes a great deal of difference whether you're functioning with an IQ of 76 or something of that nature. Excuse me, Your Honor? I said it makes it very difficult, in my view, to make the judgment of someone's work capacity when she's functioning at an IQ level of 76, 77, and then also has this severe fractured physical disability, et cetera. Putting those two together, you get one answer. Now, what happened here is administrative. This got separated. How do we get them back together that somebody looks at this total package at one time? I agree, Your Honor. How do we get that back? Remand the case. Remand the case. I understand that's what you want. How will that cause them to be? I don't want it to go back and get piecemealed again. I understand, Your Honor. I think the way to do that is to make sure that, at the hearing, that the representative for Ms. Neelan makes sure that the Bernauer report is brought to the attention of the ALJ and is argued in the hearing. That should provide a basis for any future appeal, which we might extend out to 12 years since the original application could be appealed if, once again, the ALJ ignores the report in the way he writes his opinion. Speculation about the earnings is a complicated question, about whether the fact that someone earned a few thousand dollars, especially with the psychological background of Ms. Neelan, whether that equates to significant gainful activity is a complicated question. And to jump to the conclusion that because they earned some money, that equates to significant gainful activity is not correct. Thank you. We have your argument. Your time has expired. Okay. Thank you very much, Your Honor.